NO JS-6

NOTE: CHANGES
MADE BY COURT

ERIC H. HOLDER, JR.
Attorney General
LORETTA KING
Acting Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM, Chief
DONNA M. MURPHY, Deputy Chief
CHARLA D. JACKSON, Trial Attorney
E-mail: charla.jackson@usdoj.gov
Housing & Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. - G Street
Washington, DC 20530
Tel: (202) 353-9705
Fax: (202) 514-1116

GEORGE S. CARDONA
Acting United States Attorney
LEON W. WEIDMAN
Chief, Civil Division
ERIKA JOHNSON-BROOKS
Assistant United States Attorney
Calif. Bar No. _____
E-mail: erika.johnson@usdoj.gov
1200 U.S. Courthouse
312 North Spring Street
Los Angeles, CA 90012
Tel: (213) 894-2434
Fax: (213) 894-0141
Attorneys for Plaintiff
United States of America

FILED
CLERK, U.S. DISTRICT COURT
NOV 18 2009
NOV 18 2009
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

2009 SEP 30  PM 3: 41

LODGED

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

    v.

NARA BANK;
UNION AUTO SALES, INC., d/b/a
Union Mitsubishi;
HAN KOOK ENTERPRISES, INC., d/b/a
Los Angeles City Hyundai, Garden
Grove Hyundai, Han Kook Imports,
Vermont Chevrolet, and Han Kook Motors, Inc.

Defendants.

_____ )

CV09-7124 RGK (JCx)

PARTIAL CONSENT DECREE

# I. **INTRODUCTION**

1.     This Consent Decree resolves fully and finally all claims of the United States against Defendant Nara Bank (hereinafter "Nara Bank") asserted, or that could have been asserted, arising out of or relating to allegations discussed in this Consent Decree that Nara Bank, Union Auto Sales, Inc., and Han Kook Enterprises, Inc., have allegedly violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f ("ECOA"), and its implementing regulations located at 12 C.F.R. Part 202 ("Regulation B"). The United States alleges that Nara Bank, as well as the other named Defendants, engaged in policies and practices that discriminated against non-Asian consumers who receive financing to purchase automobiles. Specifically, the United States alleges that Defendants charged non-Asian customers, many of whom were Hispanic, higher "overages" or "dealer mark-ups" than similarly-situated Asian customers.[1]  Nara Bank, denies all of the

---

[1]  An "overage" is the discretionary mark-up that is reflected in the borrower's interest rate. It represents the difference between the Annual Percentage Rate ("APR") and the Buy Rate on the loan. The APR is the measure of the cost of credit, expressed as a yearly rate, as defined in Regulation Z, 12 C.F.R. Part 226, implementing the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f. The "Buy Rate" is a risk-related finance charge taking into account the consumer's credit risk and the terms of the deal, and is expressed in the form of a percentage. The "Buy Rate" is the amount for which a lender agrees to acquire a contract from the dealership. For example, if the buy rate were 8% and the borrower's interest rate, or APR, was 8.5%, then the "overage" or "dealer mark-up" for that loan would be .50%.

United States' allegations, and specifically denies that their policies or practices violated any laws or discriminated against any individuals.  Nara Bank further denies that it was involved in any of the practices of the Defendant dealerships.  This Decree is a compromise of disputed allegations, and is not to be construed as an admission of liability on the part of Nara Bank, by whom liability is expressly denied.  This Decree cannot be used in any action or proceeding as an admission of any liability or wrongdoing.

2.      To resolve these allegations, Nara Bank has agreed to a program making any dealer financing it provides available on an equal basis to similarly-situated consumers regardless of race or national origin, and to compensate aggrieved persons.

## II. BACKGROUND

3.      The United States alleges that in a typical indirect automobile financing transaction through the Union Auto Sales, Inc. ("Union Mitsubishi") dealership, the Han Kook Enterprises, Inc. ("HKE") dealerships (collectively "Defendant dealerships"), and other dealerships from which Nara Bank or other lending institutions would purchase automobile financing contracts (collectively "the dealerships"), the dealerships would obtain and complete customer applications, obtain customer credit reports, and verify income,

among other customer characteristics, to make an initial determination

whether an automobile loan applicant met Nara Bank's and/or another

lending institution's underwriting guidelines, as indicated on rate sheets that

were provided on a regular basis to the dealerships by Nara Bank and such

other lending institutions.  If the dealerships concluded that the applicant met

the underwriting standards, the dealership and the customer would sign a

sales contract setting forth the agreed upon interest rate.  This contract,

reflecting the dealership as the creditor, would be forwarded to Nara Bank.

Nara Bank would then order a new credit report and validate the dealership's

underwriting and the pricing of the loan.  If Nara Bank agreed to purchase the

loan, it would send the dealership a "Notification of Acceptance."  Under its

agreements with the dealerships, if Nara Bank did not accept the contract, it

would provide the applicant with a notification of adverse action.  Once Nara

Bank notified the dealerships of acceptance, the dealerships then would have

the discretion to decide whether or not to present loan terms to the consumer

for finalizing the deal based on the Nara Bank contract, or whether to finalize

the deal using the terms of another lending institution.   Nara Bank did not

participate in the negotiation of the financing contract terms between the

borrower and the dealerships.  Nara Bank reviewed contracts presented to

Nara Bank by dealerships to confirm that the contracts met Nara Bank's

underwriting guidelines and other rate sheet terms.

4.   For each loan application referred by the dealerships to Nara Bank, or by Union Mitsubishi or HKE to another lender, the dealership uses the buy rate set by Nara Bank or the other lender.  The buy rate is customarily communicated by the lender only to the dealership, not the consumer.   The dealership then sets the "dealer mark-up" or "overage," a non-risk related finance charge that the dealership adds to the buy rate.   Typically, the dealership then discloses to the consumer the "contract rate," or the APR, which equals the buy rate plus the dealer's overage or mark-up.  In deals where the dealership includes an overage in the consumer's interest rate, Nara Bank or other lending institutions typically pay a portion of the overage to the dealership.

5.   The United States further alleges that dealership employees do not use formal, written, or uniform guidelines and procedures to set overages or dealer mark-ups.  Instead, dealership employees are granted the discretion by the dealerships to engage in subjective decision-making, setting overages and dealer mark-ups within broad parameters bounded only by maximum limits set by Nara Bank and other financing institutions.  The United States alleges that the Defendants charged non-Asian consumers, including Hispanic consumers, higher overages than similarly-situated Asian consumers.  The

United States alleges that the differences in the overages in the automobile loans made to non-Asian, including Hispanic, borrowers, as compared to those made to Asian borrowers, cannot be explained fully by factors unrelated to race or national origin.

6.    The United States further alleges that these methods of setting overages or dealer mark-ups were not justified by business necessity and discriminated against consumers with respect to credit transactions, on the basis of their race or national origin, in violation of ECOA, 15 U.S.C. § 1691e(h), and Regulation B, 12 C.F.R. 202.2(n), 202.4, and 202.6(b)(9).

7.    Nara Bank denies all of the United States' allegations and specifically denies that it violated any law, statute or regulation or that it discriminated against anyone.  Nara Bank acknowledges that certain non-Asian borrowers may enter into contracts with the Defendant dealerships that in certain cases may have had higher APRs than certain Asian borrowers, but Nara Bank believes that is likely attributable to lack of borrower sophistication and knowledge of alternative credit sources among individual borrowers or other non-discriminatory reasons.  Also, the dealerships were free to place their contracts with other lending institutions and did so, and Nara Bank was not the exclusive purchaser of contracts from the dealerships.  Notwithstanding Nara Bank's differences with the United States with respect to the reasons for

the APRs agreed to by certain borrowers, Nara Bank shares the goal of the United States of assuring that considerations of race or national origin play no role whatsoever in the price of credit, and Nara Bank is entering into this Consent Decree to further that goal.

8.     There has been no factual finding or adjudication with respect to any matter alleged by the United States.  Rather, the parties have agreed that this matter should be resolved before any complaint or lawsuit has been filed by the United States to avoid the time and expense of a trial; and have entered into this Decree voluntarily to resolve the allegations asserted by the United States and avoid the risks and burdens of litigation.

### III.  REMEDIAL ORDER

9.     The provisions set forth in Sections III. through V. of this Decree, shall be implemented within ninety (90) days of the Effective Date[2] of this Decree, unless a longer period shall be provided in this Decree, and shall continue until the end of its Term, at the end of which Term this Decree shall automatically terminate.  For purposes of this Decree, the "Term" of this Decree shall be 3 years and 90 days from the Effective Date.

---

[2]   The "Effective Date" is herein defined as the date that this Consent Decree is approved and entered by the United States District Court for the Central District of California.

### A.  General Nondiscrimination Injunction

10. Nara Bank, including all of its officers and employees, are hereby enjoined from engaging in any act or practice which discriminates on the basis of race or national origin, in any aspect of a credit transaction, in violation of the Equal Credit Opportunity Act, Act, 15 U.S.C. §§ 1691-1691f.  More specifically, Nara Bank is hereby enjoined from discriminating, on the basis of race or national origin, against any loan applicant and/or consumer in the terms or conditions relating to the extension of credit, including the setting of overages in indirect automobile loan purchases.

### B.  Provisions Regarding Nara Bank

11. Nara Bank represents that it is not currently in the business of indirect automobile lending or any direct consumer lending, and has no plans to re-enter those lines of business.  Based on this representation, the provisions of paragraphs 11-15 shall apply to Nara Bank.

12. Within ninety (90) days from the Effective Date of this Decree, Nara Bank shall post and prominently display, in its branches and offices that are open to members of the public and in which lending activities occur, a notice of non-discrimination, in the form set forth in Appendix A.

13. Within ninety (90) days from the Effective Date of this Decree, Nara Bank shall mail the booklet, "Understanding Vehicle Financing," which was

produced by the American Financial Services Association Education

Foundation and the National Automobile Dealers Association, in cooperation

with the Federal Trade Commission, to each consumer with respect to whom

Nara Bank purchased a contract from dealerships for the financing of new or

used automobiles under which the consumer was an obligor, for the period

from January 1, 2004 to December 31, 2006, inclusive.  The copy shall be

mailed to the address for the obligor set forth on the contract, subject to any

change of that address set forth in Nara Bank's records as of the date of

mailing (the "mailing address").  In the case of more than one obligor on a

contract, Nara Bank shall mail a copy of the booklet to each such obligor that

has a different mailing address.

14.    During the term of the decree, Nara Bank shall continue to provide all

lending professionals and officers of the bank equal credit opportunity

training.  During such training, Nara Bank shall provide to all lending

professionals and officers of the bank:  (a) a copy of this Consent Decree; and

(b) training on (i) the terms of this Agreement, (ii) the fair lending

requirements of the Equal Credit Opportunity Act, and (iii) his or her

responsibilities and obligations under each.

15.    Should Nara Bank enter into the business of indirect automobile lending in

any way during the Term of this Decree, the following provisions shall apply

to Nara Bank for the Term of this Decree, and shall be implemented within ninety (90) days of such re-entry into the business:

(a)     For all automobile financing contracts purchased by Nara Bank during the Term, Nara Bank shall require all dealerships with respect to which it has entered into agreements for the purchase of automobile financing contracts from time to time (collectively, the "subject dealerships") to not: (1) charge the consumer an APR more than two and one-half percentage points (2.50%) above the Nara Bank Buy Rate then in effect, for loans with a term equal to or less than sixty (60) months; or (2) charge the consumer an APR more than two percentage points (2.0%) above the Nara Bank Buy Rate then in effect, for loans with a term greater than sixty (60) months.

(b)     Nara Bank shall develop and submit to the United States for approval a system for monitoring dealer markups (or overages) during the Term of this Decree with respect to subject dealerships.  This monitoring system shall include:

(i) For each contract Nara Bank receives from a subject dealership, Nara Bank officials shall require that all documentation related to the transaction be retained in the consumer's file.  Nara Bank shall review all documentation

related to each overage or dealer mark-up to assess whether the

overage or dealer mark-up complies with the limits set forth in

Section 15(a) of this Decree.  Nara Bank shall not accept any

contract that does not so comply.  For each loan that it does

accept, Nara Bank will certify, in writing, that the final decision

on the overage or dealer mark-up complies with the limits set

forth in Section 15 (a) of this Decree.

(ii) Nara Bank shall develop and implement procedures for

statistically monitoring the overages charged by each dealership,

and for all dealerships collectively within its network, for

disparities related to the race or national origin of the borrowers.

The procedures shall require effective corrective action to

address any disparities identified in the setting of

overages/dealer markups by one or more dealerships within Nara

Bank's automobile lending network.  These policies and

procedures shall be implemented by Nara Bank within thirty

(30) days after approval by the United States.

(c)     Nara Bank during the Term shall require each subject dealership

to provide to each customer who indicates that he or she would like to

finance an automobile purchase, and before the consumer executes any

document related to the financing or purchase of an automobile, an individual notice of non-discrimination, in the form set forth in Appendix A, a notice that each APR is negotiable, in the form set forth in Appendix B, and a copy of the booklet, "Understanding Vehicle Financing", described in Paragraph 13 above.

(d)     Nara Bank shall require the attendance, at the equal credit opportunity training program described in paragraph 14 above, of all officers, employees and agents, who will participate, in any manner, in the financing of automobiles and/or the setting of loan terms for purchasing automobiles, including but not limited to personnel who participate in any manner in the underwriting of automobile loans, the setting of buy rates, and/or the setting of dealership participation amounts.  The equal credit opportunity training program shall be expanded to include instruction in the requirements and implementation of this Subsection.

## IV.  COMPENSATION FOR AGGRIEVED PERSONS

16.   (a)     Nara Bank shall deposit in an interest-bearing escrow account maintained at Nara Bank the sum of **Four Hundred Ten Thousand Dollars ($410,000.00)** which shall be designated for the purpose making payments to Aggrieved Persons (as defined in paragraph 19 below) in transactions where

Nara Bank purchased a contract from a dealership between January 4, 2004 and October 31, 2006.

(b)    Nara Bank shall provide written verification of the deposit to the United States within seven (7) days of the Effective Date of this Decree. Any interest that accrues shall become part of the Settlement Fund and be utilized as set forth herein.

17.    Within ninety (90) days of the entry of this Consent Decree, to the extent not already provided, Nara Bank shall provide to the United States an electronic database including records of all automobile financing contracts purchased by Nara Bank for the period between January 1, 2004 and October 31, 2006.

18.    The United States shall, upon reasonable notice to Nara Bank, be allowed access to its records and files to verify the accuracy of the electronic database and to otherwise identify persons entitled to payments from the Settlement Fund.  Nara Bank shall cooperate fully with the United States in answering any questions or providing additional information related to the databases.

19.    Upon review of the electronic databases of Nara Bank, the United States shall prepare a list of Aggrieved Persons, and the amounts to be paid to each, by identifying persons who: (a) are non-Asian, including Hispanic borrowers, who purchased new vehicles and were charged overages higher than the overages charged to Asian borrowers in the electronic database who

purchased new vehicles; or (b) are non-Asian, including Hispanic borrowers, who purchased used vehicles and were charged overages higher than the overages charged to Asian borrowers in the electronic database who purchased used vehicles. Each Aggrieved Person shall receive a payment from the Nara Bank Settlement Fund, subject to the conditions set forth in Paragraph 20 below.

20. No Aggrieved Person shall be paid twice for the same transaction under the Nara Bank Settlement Fund, and no Aggrieved Person shall be paid any amount from the Nara Bank Settlement Fund until after the execution of a written release in the form set forth in Appendix C (Release).

21. Within 180 days of receiving Nara Bank's electronic database, the United States shall prepare and provide to Nara Bank a list of persons who qualify as Aggrieved Persons under paragraph 19. The United States shall notify each such Aggrieved Person via a regular mail notification letter in form and substance acceptable to the Defendants and the United States and provide Nara Bank a list of borrowers who were so notified. The notification letter shall contain a Release and a copy of this Consent Decree; and shall instruct the Aggrieved Person to execute the Release and return it promptly to:

> Chief, Housing and Civil Enforcement Section
> Civil Rights Division – NWB 7062
> United States Department of Justice
> 950 Pennsylvania Avenue, N.W.
> Washington, D.C. 20530

Attn: DJ# 188-12c-26

22. Defendants shall cooperate in the efforts to locate and notify Aggrieved Persons; and shall provide the United States with any records or documents it requests to help locate Aggrieved Persons.

23. The United States shall provide Nara Bank with all executed releases that it receives.  Within thirty (30) days of the receipt of Releases, Nara Bank shall issue checks, drawn on the Nara Bank Settlement Fund, and mail the checks to the Aggrieved Persons who executed the Releases.  The checks shall be issued in the amount designated under Paragraph 19 of this Decree.  Nara Bank  shall copy the United States on each check that is mailed.

24. Any monies not distributed from the Nara Bank Settlement Fund within one (1) year of the date the initial notifications go out to Aggrieved Persons per paragraph 21 shall be returned to Nara Bank.

## V. CONSUMER EDUCATION AND FINANCIAL LITERACY GRANTS

25. Nara Bank has established programs to further consumer financial education and financial literacy, and Nara Bank shall maintain its commitment to those programs throughout the term of this Decree.  Those programs are: 1) Junior Achievement which is an organization dedicated to educating young people

15

regarding business, economics, and free enterprise.  Nara Bank shall continue to dedicate at least 400 staff hours per year to the Junior Achievement program by providing financial literacy training to youth in different schools throughout the states of California, New York and/or New Jersey; and 2) the Nara Bank Scholarship Foundation Program, which is aimed at providing financial resources to and financial literacy education to students in California, New York, and New Jersey through the programs developed by the California Council on Economic Education (CCEE).  Nara Bank shall continue to dedicate at least 300 staff hours per year toward outreach, administration, and training with regard to this program.  During the term of this Decree, Nara Bank shall maintain a financial commitment of at least **One Hundred Thousand Dollars ($100,000.00)**, per year, toward the furtherance of these programs.

## VI. **ADMINISTRATION**

### A. **Record-Keeping and Reporting Requirements**

26. The provisions of this Article VI shall apply for the duration of the Term.

27. Nara Bank shall retain all records relating to their respective equal credit opportunity compliance.

16

28.   Upon reasonable written notice to Nara Bank, the United States shall be provided access to any and all records related to compliance with this Decree, including but not limited to individual automobile loan application files, certifications pursuant to paragraph 15(b) (i) and all records relating to Nara Bank's equal credit opportunity employee training program.

29.   Nara Bank shall advise the United States in writing within thirty (30) days of receipt of any new written customer discrimination complaint against it. Nara Bank shall also promptly provide the United States all non-privileged information it may request concerning any such complaint. Within thirty (30) days of the resolution of any such complaint, Nara Bank shall advise the United States of such resolution.

30.   Nara Bank shall serve semi-annual reports to the United States for the Term of this Decree.

    (a)   Nara Bank shall submit an initial semi-annual report containing the signed statements of receipt of this Decree and attendance at equal credit opportunity training, for officers, employees and agents as applicable. Thereafter, Nara Bank shall include in each semi-annual report the signed statements of new employees verifying that they have received this Decree and attended equal credit opportunity training as applicable.

    (b)   Nara Bank, to the extent it re-enters the automobile lending

business, shall include an electronic database for automobile loans

purchased by Nara Bank during the previous one hundred and eighty

(180) day period.  The electronic database shall indicate whether each

consumer purchased a new or used car from the respective dealership,

and include the dealership name, consumer's name, street address, city,

state, zip code, telephone number, make/model/year of vehicle,

application date, any special financing programs, credit score (if

available), Buy Rate, overage or dealer mark-up, and APR.

(c)     Nara Bank shall provide a complete account of its compliance

with the requirements of this Decree in the previous one hundred and

eighty (180) days; an objective assessment as the extent to which each

requirement was met; and an explanation if any particular requirement

was not met.  In addition, Nara Bank shall attach to the semi-annual

report representative copies of training materials and notices of non-

discrimination and that each APR is negotiable, as appropriate.

(d)     Nara Bank shall serve its semi-annual reports by overnight

delivery on the Chief of the Housing and Civil Enforcement Section[3]

---

[3] All semi-annual reports should be sent to:

18

beginning two hundred and seventy (270) days after the Effective Date and continuing every one hundred and eighty (180) days thereafter, for the remainder of the Term of this Decree.

**B.      Successors in Interest**

31.   This Decree shall be binding on Nara Bank, including all of its officers, agents, its assigns and successors in interest.  In the event any Defendant seeks to transfer or assign all or part of its interest in the lending institution or dealership, and the successor or assign intends on carrying on the same or similar use, as a condition of sale the Defendant shall obtain the written accession of the successor or assign to any obligations remaining under this agreement for the remaining term of this agreement.

**C.      Retention of Jurisdiction, Modifications, and Remedies for Non-Performance**

32.   The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Decree for a period of 3 years and ninety (90) days, after which time the case shall be dismissed with prejudice.  The United States may move the Court to extend the duration of the Decree in the interests of justice.  Nara Bank shall bear its own costs.

Chief, Housing and Civil Enforcement Section
1800 G Street, N.W.
Suite 7002
Washington, D.C. 20006
attn: DJ 188-12c-26

33. Any time limits for performance imposed by this Decree may be extended by mutual agreement of the parties. This Decree may be modified, upon approval of the Court, by written agreement of each Defendant and the United States.

34. In the event that any disputes arise concerning the interpretation of or compliance with the terms of this Decree, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to this Court for resolution. In the event of either a failure by Nara Bank to perform in a timely manner any act required by this Decree or an act by any one or all Defendants in violation of any provision hereof, the United States may move this Court to impose any remedy authorized by law or equity. Such remedy may include, but is not limited to, an order requiring performance or non-performance of certain acts and an award of any damages, costs and attorneys' fees to the United States.

**IT IS SO ORDERED:**

This _____ 18 _____ day of _____ NOV _____, 2009.

_____

UNITED STATES DISTRICT COURT

as modified

1  Agreed to by the parties as indicated by the signatures of counsel below:

2

3                              **FOR THE UNITED STATES:**

4

5                              ERIC H. HOLDER, JR.
                               Attorney General
6

7

8  GEORGE S. CORDONA           LORETTA KING
9  Acting United States Attorney  Acting Assistant Attorney General
                               Civil Rights Division
10

11

12 LEON W. WEIDMAN             STEVEN H. ROSENBAUM
13 Civil Chief, Civil Division  Chief
                               Housing and Civil Enforcement
14                             Section
                               DONNA M. MURPHY
15                             Deputy Chief
16
17                             Charla D. Jackson   EJB

18 ERIKA JOHNSON-BROOKS        CHARLA D. JACKSON
   Assistant United States Attorney  Trial Attorney
19 Email: erika.johnson@usdoj.gov  Email: charla.jackson@usdoj.gov
20 Office of the United States Attorney  Housing and Civil Enforcement Section
   Central District of California  Civil Rights Division
21 1200 U.S. Courthouse        U.S. Department of Justice
22 312 North Spring Street     950 Pennsylvania Avenue, N.W. - G St.
   Los Angeles, CA 90012       Washington, D.C.  20530
23 (213)894-2434 (phone)       (202) 353-9705 (phone)
24 (213)894-0141 (fax)         (202) 514-1116 (fax)

25

26                                    21

27

28

1

**FOR THE DEFENDANT NARA BANK**

2

3

4  Juliet Stone
   FVP & Corporate Counsel
5  3731 Wilshire Boulevard
6  Suite 1000
   Los Angeles, CA 90010
7  (213)235-3000 (phone)
8  (213)235-3257 (fax)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                              22

27

28

## APPENDIX A

# We do Business in Accordance with Federal Fair Lending Laws

**UNDER THE EQUAL CREDIT OPPORTUNITY ACT, IT IS ILLEGAL TO DISCRIMINATE IN ANY CREDIT TRANSACTION:**

**On the basis of race, color, national origin, religion, sex, marital status, or age;**

**Because income is from public assistance; or**

**Because a right has been exercised under the Federal Consumer Credit Protection Laws.**

**IF YOU BELIEVE YOU HAVE BEEN DISCRIMINATED AGAINST, YOU SHOULD SEND A COMPLAINT TO:**

| Board of Governors of the Federal Reserve System | or | U.S. Department of Justice Washington, DC 20530 |
|---|---|---|
| | | Telephone:1-800-896-7743 |
| | | Web site: http://www.usdoj.gov/crt/housing |

23

## **APPENDIX B**

     **The Annual Percentage Rate ("APR") on the loan you use to purchase a car may be negotiable with (dealership name here).**

     **(Dealership Name here) may receive a portion of the Finance Charge on the loan you use to purchase your car.**

24

## APPENDIX C

## RELEASE OF ALL CLAIMS

In consideration of and contingent upon the payment of the sum of _____ _____ dollars ($              ), pursuant to the Consent Decree entered in United States v. Nara Bank, et al., Civil Action No. ___, in the United States District Court for the Central District of California (the "Consent Decree"), receipt of a copy of which Consent Decree is hereby acknowledged by me, I hereby acknowledge full accord and satisfaction of and I hereby release and forever discharge Nara Bank, including all of its officers, employees, agents, representatives, assignees, and successors in interest, from any and all liability for any and all actions, causes of action, damages or claims of damages or any and all other claims, legal or equitable, I may have against them arising out of or relating to the issues in the Consent Decree through and including the date of the entry of the Consent Decree.

I fully acknowledge and agree that this release of Nara Bank shall be binding on me as well as my heirs, representatives, executors, successors, administrators, and assigns.

The parties intend this Release to be as broad as possible and to include all legal and equitable claims, known or unknown, that were or would have been asserted against Nara Bank for any and all actual compensatory, punitive, statutory or any other damages, including but not limited to, pain and suffering, emotional distress, and attorneys' fees, costs and expenses in any way arising or connected

with claims of discrimination relating to the claims in the Consent Decree against Nara Bank through and including the date of this Release.

I acknowledge and understand that, by signing this Release and accepting this payment, I am waiving any right to pursue my own legal action based on the discrimination alleged by the United States in the Consent Decree.

I also acknowledge that I am familiar with the provisions of California Civil Code Section 1542 and expressly agree that the release set forth above constitutes a waiver and release of any rights or benefits that may arise thereunder, to the full extent that such rights or benefits may be waived.  Section 1542 of the California Civil Code provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS/HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM/HER MUST HAVE MATERIALLY AFFECTED HIS/HER SETTLEMENT WITH THE DEBTOR.

Thus, notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of all claims, I expressly acknowledge that this Release is also intended to include in its effect, without limitation, all claims which I do not know or expect to exist in my favor at the time of execution hereof, in any way arising out of or connected with claims of discrimination relating to the claims in the Consent Decree, and that this Release contemplates the extinguishment of any such claim or claims.

I further acknowledge that I have been informed that I may review the terms of this Release with an attorney of my choosing, and to the extent that I have not obtained that legal advice, I voluntarily and knowingly waive my right to do so.

26

I hereby acknowledge that I have read and understand this release fully and have executed it voluntarily and with full knowledge of its legal consequences.

_____
(Signature)

_____
(Print name)

_____
(Address)

_____
(Address)

_____
(Date)

27